IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
- BROWNSVILLE DIVISION -

| | | |
|---|---|---|
| ALBERT MASCORRO FLORES; CHRISTINA VARGAS; MARTHA RAMOS; JUAN V. CORTEZ, III; CHRISTINA CUEVAS; LETICIA ARREOLA; ARIANNA RODRIGUEZ; NEREYDA GARZA; and NANCY SILVA | § § § § § § § § § | CIVIL ACTION NO. _____ |
| v. | § § | (JURY DEMANDED) |
| AMAZING GRACE PRIMARY HOME CARE, LLC; JUAN JOSE PIZANA; JAVIER CAVAZOS; MARIA CARMEN CAVAZOS; and MARIA LUISA MACIAS | § § § § § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs **ALBERT MASCORRO FLORES; CHRISTINA VARGAS; MARTHA RAMOS; JUAN V. CORTEZ, III; CHRISTINA CUEVAS; LETICIA ARREOLA; ARIANNA RODRIGUEZ; NEREYDA GARZA; and NANCY SILVA** ("Plaintiffs") bring this Fair Labor Standards Act ("FLSA") suit against the above-named Defendants and show as follows:

**A. NATURE OF SUIT.**

1. The FLSA was passed by Congress in 1938 in an attempt to eliminate low wages and long hours and to correct conditions that were detrimental to the health and well-being of workers. To achieve its humanitarian goals, the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate not

less than one and one-half times the regular rate at which he is employed." *Walling v. Helmerich & Payne*, 323 U.S. 37, 40 (1944) (discussing the requirements of 29 U.S.C. § 207 (a)).

## B. PARTIES.

2. Plaintiff Albert Mascorro Flores is an individual who was employed by Defendants within the meaning of the FLSA.

3. Plaintiff Albert Christina Vargas is an individual who was employed by Defendants within the meaning of the FLSA.

4. Plaintiff Martha Ramos is an individual who was employed by Defendants within the meaning of the FLSA.

5. Plaintiff Juan V. Cortez, III is an individual who was employed by Defendants within the meaning of the FLSA.

6. Plaintiff Christina Cuevas is an individual who was employed by Defendants within the meaning of the FLSA.

7. Plaintiff Leticia Arreola is an individual who was employed by Defendants within the meaning of the FLSA.

8. Plaintiff Arianna Rodriguez is an individual who was employed by Defendants within the meaning of the FLSA

9. Plaintiff Nereyda Garza is an individual who was employed by Defendants within the meaning of the FLSA.

10. Plaintiff Nancy Silva is an individual who was employed by Defendants within the meaning of the FLSA.

11.     Amazing Grace Primary Home Care, Inc. (hereinafter "Amazing Grace" or "Defendant") is a for-profit company organized under the laws of the State of Texas. It may be served with process through service on its registered agent at the following address:

>Javier C. Cavazos
>220 E. Ocean Blvd.
>Los Fresnos, Texas 78566
>or wherever he may be found

12.     Juan Jose Pizana (hereafter "Pizana") is an owner, operator and member of Amazing Grace. He may be served with process through service on its registered agent at the following address:

>Juan Jose Pizana
>2054 Baja Circle
>Los Fresnos, Texas 78566
>or wherever he may be found

13.     Javier Cavazos (hereafter "J. Cavazos") is an owner, operator, and member of Amazing Grace.  He may be served with process through service on its registered agent at the following address:

>Javier C. Cavazos
>2054 Baja Circle
>Los Fresnos, Texas 78566
>or wherever he may be found

14.     Maria Carmen Cavazos (hereafter "M.C. Cavazos") is an owner, operator and member of Amazing Grace.  She may be served with process through service on its registered agent at the following address:

>Maria C. Cavazos
>2054 Baja Circle
>Los Fresnos, Texas 78566
>or wherever she may be found

15. Maria Luisa Macias (hereafter "Macias") is an owner, operator and member of Amazing Grace. She may be served with process through service on its registered agent at the following address:

>Mary L. Macias
>32798 Limon Drive
>Los Fresnos, Texas 78566
>or wherever she may be found

### C. CONDITIONS PRECEDENT

16. All conditions precedent have been performed or have occurred. See Plaintiffs' Consent to Sue Forms attached as Exhibits A - I.

### D. JURISDICTION AND VENUE

17. Venue of this action is proper in this District and division because Defendants are subject to this personal jurisdiction. Venue exists in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred in this judicial district and division.

18. Defendant, Amazing Grace, a non-natural person, is domiciled in Los Fresnos, Cameron County, Texas. As such, venue is also proper in this judicial district and division. Individual Defendants reside in Cameron County, Texas.

19. This Court has jurisdiction over this case pursuant to the district court's federal question jurisdiction as set forth in 28 U.S.C. § 1331. Specifically, this case is brought pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*, as amended.

20. This Court has supplemental jurisdiction over Plaintiffs' Texas state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to their federal claims that they form part of the same case or controversy.

### D. COVERAGE.

21. At all material times, Defendants acted, directly or indirectly, in the interest of an employer with respect to Plaintiffs.

22. At all times, Defendant, Amazing Grace, has been an employer within the meaning of the FLSA.

### E. DOL ACTION AGAINST AMAZING GRACE

23. The U.S. Department of Labor ("DOL") investigated Amazing Grace in 2021. DOL recovered hundreds of thousands of dollars from Amazing Grace on behalf of Service Attendants (i.e. Providers), who were hourly workers.

### F. FACTUAL ALLEGATIONS

24. At all times material, Defendants, a home health agency regulated by the Texas Health and Human Services Commission ("HHSC"), operated as an "enterprise engaged in commerce" as that term is defined by 29 U.S.C. 203 (s).

25. To verify claims and ensure Medicaid beneficiaries are receiving authorized services under state and federal law, HHSC requires home health agencies like Amazing Grace to use advanced electronic visit verification systems ("EVVs"). Some managed care organizations also rely on electronic visit verifications systems.

26. HHSC retained "VESTA" as its approved third-party EVV. It is a web-based management system designed for Texas "Program Providers."

27.     As a home health agency, Amazing Grace, is a "Program Provider" that is required to use VESTA's EVV.

28.     Among the many uses, VESTA EVV's management system facilitates scheduling of personal care and home visits, billing, comprehensive reporting, visit verification by Providers (i.e. "Clock in/Clock out") and even a "manual" three-step process for visits that cannot be automatically verified.  It also contains a "Notes" tab that included a Covid symptoms questionnaire that was used by Defendants during the pandemic.

29.     Defendants employ Service Attendants hereinafter ("Providers"), who perform personal care and home care services for beneficiaries under state and federal programs.

30.     During the pandemic, Defendant, Carmen Cavazos, owner of Amazing Grace, directed Plaintiffs to record each patient's and each provider's COVID symptoms before entering any household.

31.     Defendants instructed Plaintiffs to conduct "Covid Symptoms" interviews with the patient, the patient's family members, and each provider.

32.     Whether working at home or at the Amazing Grace office in Los Fresnos, Plaintiffs would record the Covid symptoms or lack of symptoms into the "Notes" tab of the VESTA EVV profile for each patient and provider.

33.     The data entry of Covid Symptoms had to be entered into the VESTA EVV "Notes" tab by no later than 11:59 p.m. on the day of the actual home visit.  Provider home visits were scheduled a-round-the-clock during the day with the exception of 12:00 a.m.  As a result, Plaintiff did not and could not have a "8 hour" work day or "40 hour" work week.

34. To make matters worse, Plaintiffs were then required to input the Covid Symptoms data, including the actual time each patient, family member and/or provider called into a non-VESTA Excel spreadsheet. The Excel spreadsheet would also identify the type of communication - whether text, phone call or VESTA mobile app. Because patients, their family members, and providers could call in this information at any time during the day, Plaintiffs did not and could not have a "regular" work day or "8 a.m.-to-5 p.m." schedule.

35. The Covid Symptoms interviews, the data entry into VESTA EVV, and the data entry into the Excel spreadsheet continued into Saturdays and Sundays because home visits are scheduled on weekends as well for patients.

36. Even if Plaintiffs were on vacation or leave, they were required to conduct Covid Symptoms interviews mentioned above, input the data into the VESTA EVV "Notes" tab, and input the data into the Excel spreadsheet.

37. Shockingly, even during the freeze of February 2021 when power outages affected most of Texas, Defendants did not relax required Covid Symptoms interviews, data entry in the VESTA EVV "Notes" tab or the data entry into the Excel spreadsheet. If Plaintiffs did not have power, Defendants instructed Plaintiffs to input the above-data using their work-issued mobile or personal mobile phone.

38. Even without power during the freeze, Plaintiffs did not and could not have a "8 hour" work day or "8 a.m.-to-5 p.m." schedule.

39. Plaintiffs, in addition to the COVID activities, in their roles as EEV clerks and/or PHC Supervisors, performed various compensable work-related activities, at home after scheduled hours (8 a.m. - 5 p.m.).

40. During Plaintiffs' employment with Defendants, Plaintiffs regularly worked in excess of 40 hours per week.

41. More specifically, Plaintiff Mascorro regularly worked 91 hours per workweek.

42. Due to working 91 hours per week, Plaintiff Mascorro's hourly rate fell to $6.16 per hour - a deficiency of $1.09 an hour below the federal and state minimum of $7.25 per hour.

43. Pursuant to 29 CFRS 541.602, Plaintiff Mascorro was mis-classified as an exempt, salaried employee; and because he was not paid the minimum salary of $684 per week; he is entitled to overtime pay at 1.5 times his regular rate of pay.

44. As such, during Plaintiff Mascorro's employment with Defendants from March 24, 2020 to his separation date of July 27, 2021, Defendants failed to pay Plaintiff Mascorro the federal and state minimum wage for the first 40 hours per workweek and failed to pay overtime at 1.5 times his regular rate of pay for all of the hours over 40 hours in a workweek.

45. More specifically, Plaintiff Arreola regularly worked 90 hours per workweek.

46. Pursuant to 29 CFRS 541.602, Plaintiff Arreola was mis-classified as an exempt, salaried employee; and because she was not paid the minimum salary of $684 per week; he is entitled to overtime pay at 1.5 times his regular rate of pay.

47. As such, during Plaintiff Arreola's employment with Defendants from March 24, 2020 to her separation date of March 27, 2021, Defendants failed to pay Plaintiff Arreola the federal and state minimum wage for the first 40 hours per workweek and failed to pay overtime at 1.5 times her hourly rate for all of the hours worked over 40 hours in a

workweek.

48. More specifically, Plaintiff Ramos regularly worked 76 hours per workweek.

49  Plaintiff Ramos was mis-classified as an exempt, salaried employee.

50. As such, during Plaintiff Ramos' employment with Defendants from March 24, 2020, until her separation on June 25, 2021, Defendants failed to pay Plaintiff Ramos pay overtime at 1.5 her regular rate of pay for all of the hours worked over 40 hours in a workweek.

51. More specifically, Plaintiff Silva regularly worked 67 hours per workweek.

52. Plaintiff Silva was mis-classified as an exempt, salaried employee.

53. As such, during Plaintiff Silva's employment with Defendants from March 24, 2020, until her separation on April 24, 2021, Defendants failed to pay Plaintiff Silva pay overtime at 1.5 her regular rate of pay for all of the hours worked over 40 hours in a workweek.

54. More specifically, Plaintiff Vargas regularly worked 71 hours per workweek.

54. During Plaintiff Vargas' employment with Defendants from March 24, 2020, until her separation on May 24, 2021, Plaintiff regularly worked in excess of 40 hours per workweek; more specifically, Defendants failed pay her overtime at 1.5 her hourly rate for all of the hours worked over 40 hours in a workweek.

56. More specifically, Plaintiff Cortez regularly worked 61.50 hours per workweek.

57. During Plaintiff Cortez' employment with Defendants from March 24, 2020, until his separation on June 30, 2021, Plaintiff regularly worked in excess of 40 hours per workweek; more specifically, Defendants failed pay him overtime at 1.5 her hourly rate for all of the hours worked over 40 hours in a workweek.

58. More specifically, Plaintiff Cuevas regularly worked 66.25 hours per workweek.

59. During Plaintiff Cuevas' employment with Defendants from March 24, 2020, until her separation on June 25, 2021, Plaintiff regularly worked in excess of 40 hours per workweek; more specifically, Defendants failed pay her overtime at 1.5 her hourly rate for all of the hours worked over 40 hours in a workweek.

60. More specifically, Plaintiff Rodriguez regularly worked 68 hours per workweek.

61. During Plaintiff Rodriguez's employment with Defendants from March 24, 2020, to her separation date of May 24, 201, Plaintiff regularly worked in excess of 40 hours per workweek; more specifically, Defendants failed pay her overtime at 1.5 her hourly rate for all of the hours worked over 40 hours in a workweek.

62. More specifically, Plaintiff Garza regularly worked 50.5 hours per workweek.

63. During Plaintiff Rodriguez's employment with Defendants from March 24, 2020, to her separation date of May 21, 2021, Plaintiff regularly worked in excess of 40 hours per workweek; more specifically, Defendants failed pay her overtime at 1.5 her hourly rate for all of the hours worked over 40 hours in a workweek.

64. Upon information and belief, Defendants were aware of the federal minimum wage rate of $7.25 per hour and the requirement to pay a rate of not less than one and 1.5 times the regular rate for hours worked over forty.

65. Upon information and belief, Defendants were aware of Plaintiffs' total hours while they worked for Amazing Grace.

66. Defendants failed to maintain full and accurate records of the hours actually worked by Plaintiffs as required by 29 U.S.C. § 516.2(A).

67. Defendants' failure to maintain records and provide Plaintiffs' with an accurate statement of their earnings thwarted Plaintiffs ability to determine their wage and hours.

68. Defendants were aware or acted in reckless disregard for the fact that Plaintiffs were paid below the minimum wage.

69. Defendants were aware or acted in reckless disregard for the fact that Plaintiffs worked in excess of 40 hours per workweek and did not receive overtime pay.

70. Defendants' actions in failing to comply with the requirements of the Fair Labor Standards Act were willful.

71. Defendants' actions in failing to comply with the requirements of the Texas Pay Day Law Act were willful.

72. As a result of Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiffs, the Defendants have failed to make, keep, and preserve records with respect to each of its employees sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA and Texas Pay Day Law Act.

73. Records, if any, concerning the number of hours worked by Plaintiffs and the actual compensation paid to the Plaintiffs are in the sole possession and custody of the Defendants. Plaintiffs intend to obtain these records, if any, by appropriate discovery proceedings to be taken promptly in this case, and if necessary, will then seek leave of the court to amend this Complaint to set forth the precise amount due.

74. Defendants failed to properly disclose or apprise Plaintiffs of their rights under the FLSA.

75.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs are entitled to liquidated damages pursuant to the FLSA - specifically, section 216 (B) of the FLSA.

76.     Due to international, willful, and unlawful acts of the Defendants, Plaintiffs suffered damages in an amount nor presently ascertainable of unpaid minimum wages and overtime compensation, and equal amount as liquidated damages, and prejudgment interest.

77.     Defendants contracted with Plaintiffs to work for Amazing Grace from their homes at the Amazing Grace office.

78.     Defendants did not pay Plaintiffs for all their compensable hours of work.

79.     In performing this work, Plaintiffs provided valuable services to Defendants.

80.     Defendants accepted Plaintiffs' services under such circumstances that Defendants reasonably knew Plaintiffs expected to be paid for their services.

## G. CAUSE OF ACTIONS

**1.  FLSA:      - Misclassified Employees Owed Overtime -**

81.     Plaintiffs Mascorro, Arreola, Ramos and Silva, assert and incorporate by reference, each and every allegation contained in paragraphs 24 - 81 as if fully re-written herein.

82.     During the relevant time period, Defendants violated the Fair Labor Standards Act for workweeks longer than 40 hours without compensating Plaintiffs for their work in excess of forty hours per week at rates no less than one-and-a-half times the regular rates for which they were employed.

83.     Defendants owe Plaintiffs overtime pay based on work directives requiring Plaintiffs perform work during off hours at home, during lunch, Saturdays, Sundays and when on

leave/vacation.

84. Defendants knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay overtime compensation with respect to Plaintiffs. By failing to pay Plaintiffs their overtime compensation at one and one-half times their regular rates, Defendants continuously violated the FLSA's overtime provisions.

85. Defendants did not act in good faith and/or have reasonable grounds for a belief that its actions did not violate the FLSA nor did it act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law; (b) FLSA, 29 U.S.C. § 201, et seq.; (c) U.S. Department of Labor Wage & Hour Opinion Letters; and (d) the Code of Federal Regulations.

86. Because Defendants pay practices knowingly, willfully and/or recklessly violated the FLSA, Defendants owe past wages.

87. Plaintiffs do not seek to certify a class action nor do they attempt to form or be a part of a collective action.

**2. FLSA:  - Hourly Employees -**

88. Plaintiffs, Cortez, Garza, Vargas, and Rodriguez and Cuevas, assert and incorporate by reference each and every allegation contained in paragraphs 24 - 81 as if fully rewritten herein.

89. During the relevant time period, Defendants violated the Fair Labor Standards Act for workweeks longer than 40 hours without compensating Plaintiffs for their work in excess of forty hours per week at rates no less than one-and-a-half times the regular rates for which they were employed.

90.  Defendants owe Plaintiffs overtime pay arising based on work directives requiring Plaintiffs perform work during off hours at home, during lunch, Saturdays, Sundays and when on leave/vacation.

91.  Defendants knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay overtime compensation with respect to Plaintiffs.  By failing to pay Plaintiffs their overtime compensation at one and one-half times their regular rates, Defendants continuously violated the FLSA's overtime provisions.

92.  Defendants did not act in good faith and/or have reasonable grounds for a belief that its actions did not violate the FLSA nor did it act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law; (b) FLSA, 29 U.S.C. § 201, et seq.; (c) Department of Labor Wage & Hour Opinion Letters; and (d) the Code of Federal Regulations.

93.  Because Defendants' pay practices knowingly, willfully and/or recklessly violated the FLSA, Defendants owe past wages.

94.  Plaintiffs do not seek to certify a class action nor do they attempt to form or be a part of a collective action.

**3.  FLSA: Federal Minimum Wage Violations: - Mascorro & Arreola -**

95.  Plaintiffs, Mascorro and Arreola, assert and incorporate by reference each and every allegation contained in paragraphs 39 - 46 as if fully rewritten here.

96.  Defendants violated the FLSA, 29 U.S.C. § 206(a)(1), by failing to pay Plaintiffs the federally-mandated minimum wage of $7.25 per hour during each workweek.

### 4. Texas Minimum Wage Act Violations: - Mascorro & Arreola -

97. Plaintiffs, Mascorro and Arreola, assert and incorporate by reference each and every allegation contained in paragraphs 39 - 46 as if fully rewritten herein.

Plaintiffs incorporate each of the foregoing paragraphs as if fully set forth herein.

98. Defendants failed to pay Plaintiffs the minimum wage for each hour worked, in violation of Tex. Lab. Code § 62.051.

99. The above described actions of Defendants violated Plaintiffs' rights under the Texas Minimum Wage Act for which Plaintiffs are entitled to relief pursuant to Tex. Lab. Code § 62.021.

100. Plaintiffs attach their verification for this cause of action.  *See* Exhibits #2 and #3; Plaintiff's signed "Verification".

### 5. Breach of Contract

101. Plaintiffs assert and incorporate by reference each and every allegation contained in paragraphs 24 - 81 as if fully rewritten herein.

102. The above described actions constitute a breach of contract for which Plaintiffs are entitled to damages.

### 6. Quantum Meruit

103. Plaintiffs assert and incorporate by reference each and every allegation contained in paragraphs 24 - 81 as if fully rewritten herein.

104. If there is no contract covering Plaintiffs' work, Plaintiffs are entitled to damages pursuant to the common-law doctrine of *quantum meruit*.

### 7. Unjust Enrichment

105. Plaintiffs assert and incorporate by reference each and every allegation contained in paragraphs 24 - 81 as if fully rewritten herein.

106. If there is no contract covering Plaintiffs' work, Plaintiffs are entitled to damages pursuant to the common-law doctrine of unjust enrichment.

## H.  ATTORNEYS FEES & COSTS

107. Plaintiffs are entitled to an award of attorney's fees, costs, and expenses pursuant to the FLSA and TMWA.

## I. JURY DEMAND.

108. Plaintiffs demand a trial by jury.

## J. EXHIBITS.

1. Verification of Plaintiff Mascorro;
2. Verification of Plaintiff Arreola; and
3. Plaintiffs' Consent to Sue (Total 9).

## K. RELIEF SOUGHT.

109. WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that he recover from Defendants, the following:

   a. compensation for all hours worked at a rate not less than the applicable minimum wage pursuant to the FLSA and Texas Minimum Wage Act;

   b. overtime compensation for all unpaid hours worked in excess of forty hours in any workweek at the rate of one and one-half times their regular rates;

   c. all unpaid wages and overtime compensation;

d.  an award of liquidated and/or punitive damages as a result of the Defendant's willful mis-classification and willful failure to pay wages/ overtime compensation;

e.  awarding Plaintiffs their actual, incidental and consequential damages resulting from Defendants' breach of contract;

f.  reasonable attorney's fees, costs and expenses of this action as provided by the FLSA and contract law;

g.  Equitable relief;

h.  Expenses associated with experts;

I.  Pre-judgment and post-judgment interest as allowed by law; and

j.  such other relief as to which Plaintiffs may be entitled which this Court deems to be just and proper.

Respectfully submitted,

**RUIZ LAW FIRM, P.L.L.C.**
118 W. Pecan
McAllen, Texas 78501
Telephone:   (956) 259-8200
Telecopier:   (956) 259-8203

   */s/ Mauro F. Ruiz*
Mauro F. Ruiz
Federal I.D. No. 24007960
mruiz@mruizlaw.com
**ATTORNEY FOR PLAINTIFF**

OF COUNSEL:
**RUIZ LAW FIRM, P.L.L.C.**
118 West Pecan Blvd.
McAllen, Texas 78501
Telephone:   (956) 259-8200
Telecopier:   (956) 259-8203