IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
- BROWNSVILLE DIVISION -

| | | |
|---|---|---|
| ALBERT MASCORRO FLORES; CHRISTINA VARGAS; MARTHA RAMOS; JUAN V. CORTEZ, III; CHRISTINA CUEVAS; LETICIA ARREOLA; ARIANNA RODRIGUEZ; NEREYDA GARZA; and NANCY SILVA | § § § § § § § § | |
| | § | CIVIL ACTION NO. 1:23-cv-00054 |
| v. | § § | (JURY REQUESTED) |
| | § | |
| AMAZING GRACE PRIMARY HOME CARE, LLC; JUAN JOSE PIZANA; JAVIER CAVAZOS; MARIA CARMEN CAVAZOS; and MARIA LUISA MACIAS | § § § § § § | |

**PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY**

Plaintiffs, Albert Mascorro Flores, Christina Vargas, Martha Ramos, Juan V. Cortez, III, Christina Cuevas, Leticia Arreola, Arianna Rodriguez, Nereyda Garza and Nancy Silva ("Plaintiffs"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56, hereby move for summary judgment against Defendants, Amazing Grace Primary Home Care, LLC, Juan Jose Pizana, Javier Cavazos, Maria Carmen Cavazos and Maria Luisa Macias ("Defendants"), and show as follows:

# I.

# PROCEDURAL HISTORY

1. Defendants Amazing Grace Primary Home Care, Inc. and Javier C. Cavazos' response/answer to Plaintiff's Complaint was due on May 8, 2023.

2. Defendants failed to file any Answer or otherwise respond to the Complaint.

3. Defendants on May 29, 2023, filed a Motion to Dismiss for failure to state a claim. See Doc. 17.

4. The Court entered a scheduling order on May 30, 2023. See Doc. 18.

5. Plaintiffs filed an Opposed Motion for Leave to File First Amended Complaint on June 14, 2023, serving Defendants via PACER with Plaintiffs' First Amended Complaint. See Doc. 19.

6. On July 12, 2023, the Court granted Plaintiffs' Motion for Leave and denied as moot Defendants' Motion to Dismiss on July 12, 2023. See Doc. 20.

7. The Court entered Plaintiffs' First Amended Complaint on July 12, 2023. See Doc. 21.

8. Defendants' Answer was due on August 3, 2023 as per the Court's order of July 12, 2023. See Doc. 20.

9. Instead of filing their Answer, Defendants' filed another Motion to Dismiss pursuant to FRCP 12 (b) (6) on July 31, 2023, judicially admitting Plaintiffs' factual allegations.

10. Plaintiffs file this Motion for Summary as more fully shown below.

# II.

# BASES FOR PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT

11. Plaintiffs bring this Motion for Summary Judgment based on FRCP 56 (a) and (c)

because, based on judicial admissions/stipulations made by Defendants when they failed to respond, there is no genuine issue for trial as to Defendants' liability.

12.  Plaintiffs, Mascorro, Arreola, Ramos and Silva, as mis-classified hourly employees seek partial summary judgment as to their FLSA claims.

13.  Plaintiffs, Cortez, Garza, Vargas and Rodriguez, as hourly employees seek partial summary judgment as to their FLSA claims.

14.  Plaintiffs, Mascorro and Arreola, as hourly employees who were not paid the federally-mandated minimum wage of $7.25 per hour, seek partial summary judgment as to their FLSA claims.

15.  Plaintiffs, Mascorro and Arreola, as hourly employees who were not paid the federally-mandated minimum wage of $7.25 per hour, seek partial summary judgment as to their Texas Minimum Wage Act claims.

16.  All Plaintiffs seek partial summary judgment as to their claim that Defendants acted knowingly, willfully, or with reckless disregard for failing to pay overtime at one and one-half times their regular rates and minimum wages where applicable as required by the FLSA. Pursuant to FRCP 56 (c)(B), Defendants cannot produce admissible evidence as more fully shown below.

### III.

### LEGAL ARGUMENT & ANALYSIS

**A.    Defendant's Missed Their Deadline to File Answer.**

17.  According to section (3) of FRCP 15 (*Amended & Supplemental Pleadings*):

"**Time to Respond.**

**Unless the court orders otherwise**, any required response to an amended pleading **must be made** within the time remaining to respond to the original

pleading or within 14 days after service of the amended pleading, whichever is later."

18. Here, Plaintiffs filed their First Amended Complaint on July 12, 2023. See Doc. 20. The Court denied Defendants' first Motion to Dismiss as moot on July 12, 2023. Plaintiffs' "live pleading" claims against Defendants as contained in their First Amended Complaint were viable starting on July 12th as per the Court's denial. That same day, July 12th, Court notified all parties that Defendants had until **August 3, 2023** to file an Answer pursuant to FRCP 8. See Doc. 20. Rather than comply with the Court's directive, Defendants chose to circumvent Rule 8, refusing to admit or deny Plaintiffs' allegations, despite having four (4) months to investigate Plaintiffs' factual allegations. See Doc. 25. To avoid admitting the Plaintiffs' factual allegations, Defendants chose the *"dismiss-the-case-to-death"* route when they filed a second Motion to Dismiss pursuant to Rule 12 (b) (6).

19. Pursuant to Federal Rule of Evidence 201, Plaintiffs request that the Court take judicial notice of all pleadings, motions and papers on file in this case to establish that Defendants have not filed an answer to Plaintiffs' First Amended Complaint. See Fed. R. Evid. 201. The undisputed evidence in this Court's records establishes that Defendants have not filed an Answer to Plaintiff's First Amended Complaint.

**B.     FRCP 8 (b) (6): Defendants Admit Plaintiffs' Allegations Against Them.**

20. Based on the lack of a responsive pleading or answer by Defendants, FRCP 8 (b) (6) states:

> "An allegation other than one relating to damages **is admitted** if a responsive pleading is required and the allegation is not denied."

See Fed. R. Civ. Proc. 8 (b) (6); *Perez v. El Tequila, L.L.C.*, 847 F. 3rd 1247, 1254 (10th Cir. 2017).

21.   In the instant case, it has been established that Defendants have not filed any answer to Plaintiffs' First Amended Complaint.  In fact, Defendants have not even requested leave to file an answer.  Counsel of record for Defendants was served via electronic notice with a copy of Plaintiffs' First Amended Complaint on July 12, 2023.

22.   Because Defendants have judicially admitted via Federal Rule of Civil Procedure 8 (b)(6) all of the factual allegations in Plaintiffs' First Amended Complaint, Defendants do not and cannot dispute the facts asserted by Plaintiffs in this lawsuit.  "A judicial admission is a formal concession in the pleading or stipulations by a party or counsel that is binding on the party making them.  Although a judicial admission is not itself evidence, it has the effect of withdrawing it from contention."  See *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001).  A judicial admission is an intentional waiver, releasing the opponent from proof of fact. *Id*.  As a result, Defendants cannot assert facts inconsistent with their judicial admissions.  See *Davis. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 107-08 (5th Cir. 1987).  "A party therefore may not rebut a judicial admission made in its pleadings with new evidence or testimony."  *Id*.

**C.   Bases for Motion For Summary Judgment Under FRCP 56.**

23.   By virtue of Defendants' failure to file an answer within the specified time as set out by this Court, Plaintiffs have met their burden.  Moreover, Defendants cannot present facts or evidence to rebut or contradict the judicial admissions Defendants made under Fed. R. Civ. Proc. 8 (b) (6).  Taken from Plaintiffs' First Amended Complaint and live pleading, the following facts asserted against Defendants have been judicially admitted under Fed. R.

Civ. Proc. 8 (b) (6):

> *24.   At all times material, Defendants, a home health agency regulated by the Texas Health and Human Services Commission ("HHSC"), operated as an "enterprise engaged in commerce" as that term is defined by 29 U.S.C. 203 (s).*
>
> *25.   To verify claims and ensure Medicaid beneficiaries are receiving authorized services under state and federal law, HHSC requires home health agencies like Amazing Grace to use advanced electronic visit verification systems ("EVVs"). Some managed care organizations also rely on electronic visit verifications systems.*
>
> *26.   HHSC retained "VESTA" as its approved third-party EVV. It is a web-based management system designed for Texas "Program Providers."*
>
> *27.   As a home health agency, Amazing Grace, is a "Program Provider" that is required to use VESTA's EVV.*
>
> *28.   Among the many uses, VESTA EVV's management system facilitates scheduling of personal care and home visits, billing, comprehensive reporting, visit verification by Providers (i.e. "Clock in/Clock out") and even a "manual" three-step process for visits that cannot be automatically verified. It also contains a "Notes" tab that included a Covid symptoms questionnaire that was used by Defendants during the pandemic.*
>
> *29.   Defendants employ Service Attendants hereinafter ("Providers"), who perform personal care and home care services for beneficiaries under state and federal programs.*
>
> *30.   During the pandemic, Defendant, Carmen Cavazos, owner of Amazing Grace, directed Plaintiffs to record each patient's and each provider's COVID symptoms before entering any household.*
>
> *31.   Defendants instructed Plaintiffs to conduct "Covid Symptoms" interviews with the patient, the patient's family members, and each provider.*
>
> *32.   Whether working at home or at the Amazing Grace office in Los Fresnos, Plaintiffs would record the Covid symptoms or lack of symptoms into the "Notes" tab of the VESTA EVV profile for each patient and provider.*

33. *The data entry of Covid Symptoms had to be entered into the VESTA EVV "Notes" tab by no later than 11:59 p.m. on the day of the actual home visit. Provider home visits were scheduled a-round-the-clock during the day with the exception of 12:00 a.m. As a result, Plaintiff did not and could not have a "8 hour" work day or "40 hour" work week.*

34. *To make matters worse, Plaintiffs were then required to input the Covid Symptoms data, including the actual time each patient, family member and/or provider called into a non-VESTA Excel spreadsheet. The Excel spreadsheet would also identify the type of communication - whether text, phone call or VESTA mobile app. Because patients, their family members, and providers could call in this information at any time during the day, Plaintiffs did not and could not have a "regular" work day or "8 a.m.-to-5 p.m." schedule.*

35. *The Covid Symptoms interviews, the data entry into VESTA EVV, and the data entry into the Excel spreadsheet continued into Saturdays and Sundays because home visits are scheduled on weekends as well for patients.*

36. *Even if Plaintiffs were on vacation or leave, they were required to conduct Covid Symptoms interviews mentioned above, input the data into the VESTA EVV "Notes" tab, and input the data into the Excel spreadsheet.*

37. *Shockingly, even during the freeze of February 2021 when power outages affected most of Texas, Defendants did not relax required Covid Symptoms interviews, data entry in the VESTA EVV "Notes" tab or the data entry into the Excel spreadsheet. If Plaintiffs did not have power, Defendants instructed Plaintiffs to input the above-data using their work-issued mobile or personal mobile phone.*

38. *Even without power during the freeze, Plaintiffs did not and could not have a "8 hour" work day or "8 a.m.-to-5 p.m." schedule.*

39. *Plaintiffs, in addition to the COVID activities, in their roles as EEV clerks and/or PHC Supervisors, performed various compensable work-related activities, at home after scheduled hours (8 a.m. - 5 p.m.).*

40. *During Plaintiffs' employment with Defendants, Plaintiffs regularly worked in excess of 40 hours per week.*

41. *More specifically, Plaintiff Mascorro regularly worked 91 hours per workweek.*

42. *Due to working 91 hours per week, Plaintiff Mascorro's hourly rate fell to $6.16 per hour - a deficiency of $1.09 an hour below the federal and state minimum of $7.25 per hour.*

43. *Pursuant to 29 CFRS 541.602, Plaintiff Mascorro was mis-classified as an exempt, salaried employee; and because he was not paid the minimum salary of $684 per week; he is entitled to overtime pay at 1.5 times his regular rate of pay.*

44. *As such, during Plaintiff Mascorro's employment with Defendants from March 24, 2020 to his separation date of July 27, 2021, Defendants failed to pay Plaintiff Mascorro the federal and state minimum wage for the first 40 hours per workweek and failed to pay overtime at 1.5 times his regular rate of pay for all of the hours over 40 hours in a workweek.*

45. *More specifically, Plaintiff Arreola regularly worked 90 hours per workweek.*

46. *Pursuant to 29 CFRS 541.602, Plaintiff Arreola was mis-classified as an exempt, salaried employee; and because she was not paid the minimum salary of $684 per week; he is entitled to overtime pay at 1.5 times his regular rate of pay.*

47. *As such, during Plaintiff Arreola's employment with Defendants from March 24, 2020 to her separation date of March 27, 2021, Defendants failed to pay Plaintiff Arreola the federal and state minimum wage for the first 40 hours per workweek and failed to pay overtime at 1.5 times her hourly rate for all of the hours worked over 40 hours in a workweek.*

48. *More specifically, Plaintiff Ramos regularly worked 76 hours per workweek.*

49. *Plaintiff Ramos was mis-classified as an exempt, salaried employee.*

50. *As such, during Plaintiff Ramos' employment with Defendants from March 24, 2020, until her separation on June 25, 2021, Defendants failed to pay Plaintiff Ramos pay overtime at 1.5 her regular rate of pay for all of the hours worked over 40 hours in a workweek.*

51. *More specifically, Plaintiff Silva regularly worked 67 hours per workweek.*

52. *Plaintiff Silva was mis-classified as an exempt, salaried employee.*

53. *As such, during Plaintiff Silva's employment with Defendants from March 24, 2020, until her separation on April 24, 2021, Defendants failed to pay Plaintiff Silva pay overtime at 1.5 her regular rate of pay for all of the hours worked over 40 hours in a workweek.*

54. *More specifically, Plaintiff Vargas regularly worked 71 hours per workweek.*

55. *During Plaintiff Vargas' employment with Defendants from March 24, 2020, until her separation on May 24, 2021, Plaintiff regularly worked in excess of 40 hours per workweek; more specifically, Defendants failed pay her overtime at 1.5 her hourly rate for all of the hours worked over 40 hours in a workweek.*

56. *More specifically, Plaintiff Cortez regularly worked 61.50 hours per workweek.*

57. *During Plaintiff Cortez' employment with Defendants from March 24, 2020, until his separation on June 30, 2021, Plaintiff regularly worked in excess of 40 hours per workweek; more specifically, Defendants failed pay him overtime at 1.5 her hourly rate for all of the hours worked over 40 hours in a workweek.*

58. *More specifically, Plaintiff Cuevas regularly worked 66.25 hours per workweek.*

59. *During Plaintiff Cuevas' employment with Defendants from March 24, 2020, until her separation on June 25, 2021, Plaintiff regularly worked in excess of 40 hours per workweek; more specifically, Defendants failed pay her overtime at 1.5 her hourly rate for all of the hours worked over 40 hours in a workweek.*

60. *More specifically, Plaintiff Rodriguez regularly worked 68 hours per workweek.*

61. *During Plaintiff Rodriguez's employment with Defendants from March 24, 2020, to her separation date of May 24, 201, Plaintiff regularly worked in excess of 40 hours per workweek; more specifically, Defendants failed pay her overtime at 1.5 her hourly rate for all of the*

*hours worked over 40 hours in a workweek.*

62. *More specifically, Plaintiff Garza regularly worked 50.5 hours per workweek.*

63. *During Plaintiff Garza's employment with Defendants from March 24, 2020, to her separation date of May 21, 2021, Plaintiff regularly worked in excess of 40 hours per workweek; more specifically, Defendants failed pay her overtime at 1.5 her hourly rate for all of the hours worked over 40 hours in a workweek.*

64. *Upon information and belief, Defendants were aware of the federal minimum wage rate of $7.25 per hour and the requirement to pay a rate of not less than one and 1.5 times the regular rate for hours worked over forty.*

65. *Upon information and belief, Defendants were aware of Plaintiffs' total hours while they worked for Amazing Grace.*

66. *Defendants failed to maintain full and accurate records of the hours actually worked by Plaintiffs as required by 29 U.S.C. § 516.2(A).*

67. *Defendants' failure to maintain records and provide Plaintiffs' with an accurate statement of their earnings thwarted Plaintiffs ability to determine their wage and hours.*

68. *Defendants were aware or acted in reckless disregard for the fact that Plaintiffs were paid below the minimum wage.*

69. *Defendants were aware or acted in reckless disregard for the fact that Plaintiffs worked in excess of 40 hours per workweek and did not receive overtime pay.*

70. *Defendants' actions in failing to comply with the requirements of the Fair Labor Standards Act were willful.*

71. *Defendants' actions in failing to comply with the requirements of the Texas Pay Day Law Act were willful.*

72. *As a result of Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiffs, the Defendants have failed to make, keep, and preserve records with respect to each of its employees sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA and*

> *Texas Pay Day Law Act.*
>
> *73. Records, if any, concerning the number of hours worked by Plaintiffs and the actual compensation paid to the Plaintiffs are in the sole possession and custody of the Defendants. Plaintiffs intend to obtain these records, if any, by appropriate discovery proceedings to be taken promptly in this case, and if necessary, will then seek leave of the court to amend this Complaint to set forth the precise amount due.*
>
> *74. Defendants failed to properly disclose or apprise Plaintiffs of their rights under the FLSA.*
>
> *75. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs are entitled to liquidated damages pursuant to the FLSA - specifically, section 216 (B) of the FLSA.*
>
> *76. Due to international, willful, and unlawful acts of the Defendants, Plaintiffs suffered damages in an amount nor presently ascertainable of unpaid minimum wages and overtime compensation, and equal amount as liquidated damages, and prejudgment interest.*
>
> *77. Defendants contracted with Plaintiffs to work for Amazing Grace from their homes at the Amazing Grace office.*
>
> *78. Defendants did not pay Plaintiffs for all their compensable hours of work.*
>
> *79. In performing this work, Plaintiffs provided valuable services to Defendants.*
>
> *80. Defendants accepted Plaintiffs' services under such circumstances that Defendants reasonably knew Plaintiffs expected to be paid for their services."*

See Plaintiffs' First Amended Complaint.

24. Based on the above and pursuant to FRCP 56, Plaintiffs ask this Court to grant Plaintiffs' Motion for Partial Summary Judgment as to liability as to each Plaintiff since there is no genuine issue of material fact for a jury to consider.

WHEREFORE, Plaintiffs respectfully request that the Court grant this Partial Motion for Summary Judgment as to liability as to each Plaintiff and against Defendants Amazing Grace Primary Home Care, LLC, Javier Cavazos, Maria Carmen Cavazos and Maria Luisa Macias and for such other and further relief as the Court deems proper under the circumstances.

Respectfully submitted,

**RUIZ LAW FIRM, P.L.L.C.**
118 W. Pecan Blvd.
McAllen, Texas 78501
Telephone:   (956) 259-8200
Telecopier:   (956) 259-8203

         */s/ Mauro F. Ruiz*
Mauro F. Ruiz
State Bar No. 24007960
Federal ID. 23774
**eFile ONLY:** admin@mruizlaw.com
mruiz@mruizlaw.com

OF COUNSEL:
**RUIZ LAW FIRM, P.L.L.C.**
118 West Pecan Blvd.
McAllen, Texas 78501
Telephone:   (956) 259-8200
Telecopier:   (956) 259-8203

## CERTIFICATE OF SERVICE

      I, Mauro F. Ruiz, hereby certify that on **August 10, 2023,** a true and correct copy was delivered to opposing counsel, to-wit:

Mr. Daniel E. Vargas
**THE VARGAS LAW OFFICE**
324 W. University
Edinburg, Texas 78539
Tel:   (956) 287-3743
thevargaslawoffice@gmail.com
**ATTORNEY-IN-CHARGE FOR DEFENDANTS,
AMAZING GRACE, JAVIER CAVAZOS AND
MARIA C. CAVAZOS**

                                                 */s/ Mauro F. Ruiz*
                                                 Mauro F. Ruiz