IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ALBERT MASCORRO FLORES, CHRISTINA VARGAS, MARTHA RAMOS, JUAN V. CORTEZ, III, CHRISTINA CUEVAS, LETICIA ARREOLA, ARIANNA RODRIGUEZ, NEREYDA GARZA AND NANCY SILVA<br>Plaintiffs,<br><br>V.<br><br>AMAZING GRACE PRIMARY HOME CARE LLC, JUAN JOSE PIZANA, JAVIER CAVAZOS, MARIA CARMEN CAVAZOS AND MARIA LUISA MACIAS<br>Defendants. | § § § § § § § § § § § § § § § § § | CIVIL ACTION 1:23-cv-00054 |

**REPLY TO PLAINTIFFS RESPONSE TO DEFENADNTS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6) AND OBJECTION TO PLAINTIFFS MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

**TO THE HONORABLE COURT:**

COMES NOW, the Defendants, AMAZING GRACE PRIMARY HOME CARE LLC ("Amazing Grace"), Javier Cavazos, and Maria Carmen Cavazos, and through counsel, respectfully submit this reply in support of their Rule 12(b)(6) Motion to Dismiss, and in doing so, address the contentions raised by the Plaintiffs in their response. Foremost, the Defendants acknowledge the Court's dedication to procedural precision and aim to clarify any ambiguities or perceived oversights in the original motion. The primary thrust of the Defendants' motion was to challenge the applicability of the Fair Labor Standards Act (FLSA) based on the substantive grounds that neither Amazing Grace nor the Plaintiffs were engaged in interstate commerce as required for FLSA jurisdiction. The Defendants remain confident in this contention and submit

the following in further support and elucidation of their position.

**REPLY TO PLAINTIFFS' CONTENTION REGARDING THE INDIVIDUAL LIABILITY OF JAVIER AND MARIA CARMEN CAVAZOS**

In response to Plaintiffs' first contention, Defendants assert that a dismissal as to AMAZING GRACE PRIMARY HOME CARE LLC should logically extend to the individual defendants, Javier and Maria Carmen Cavazos. Critically, Plaintiffs' pleadings fail to delineate or articulate any specific actions or omissions by Javier and Maria Carmen Cavazos, individually, that would render them liable under the Fair Labor Standards Act (FLSA). It is a fundamental principle of the limited liability company structure, as recognized under Texas law, that members or managers of an LLC are shielded from personal liability for the LLC's obligations, barring extraordinary circumstances which have not been alleged here.

The mere status of Javier and Maria Carmen Cavazos as members or affiliated individuals of Amazing Grace does not, in itself, constitute grounds for FLSA liability. To pierce this limited liability shield and hold members personally accountable, a plaintiff must present compelling evidence or particularized allegations of individual wrongdoing or abuse of the corporate form – a standard that the Plaintiffs have not met in their pleadings. Absent such specific allegations against Javier and Maria Carmen Cavazos, holding them individually liable would run contrary to the foundational tenets of limited liability.

In light of the above, the Plaintiffs' attempt to maintain claims against the individual Defendants is both legally untenable and inconsistent with the principles governing corporate and limited liability company structures in Texas. Should the Court grant dismissal as to Amazing Grace on the basis of the FLSA arguments advanced, it should likewise dismiss the claims against Javier and Maria Carmen Cavazos, given the lack of individualized allegations warranting their separate liability.

The fundamental principle underpinning the concept of a Limited Liability Company (LLC) is the distinct legal separateness it affords its members from the entity's obligations. The Texas Business Organizations Code, under which AMAZING GRACE PRIMARY HOME CARE LLC is organized, provides for this protection. While Plaintiffs might allude to the operational roles of Javier Cavazos and Maria Carmen Cavazos in AMAZING GRACE PRIMARY HOME CARE LLC, this does not inherently make them personally liable for the alleged violations of the FLSA, absent clear and specific allegations and evidentiary showings that they personally and directly violated the Act.

In referring to *Blundell v. Lassiter*, Plaintiffs seek to imply that mere operational control is enough to deem individual members as "employers" under the FLSA. However, it is imperative to distinguish the facts of the case at hand from the specifics of *Blundell*. Not all officers or members of an LLC who exert operational control automatically qualify as "employers" under the FLSA. The particular acts, omissions, and the degree of control exercised are critical determinants in assessing personal liability.

Plaintiffs' reference to Dkt. #30-1 at ¶ 13-39, which allegedly supports their claim that the individual defendants are corporate officers with operational control, is still insufficient in establishing that these individual members acted in ways that would render them personally liable under the FLSA. Mere corporate governance or operational duties do not equate to the direct employer-employee interactions envisaged by the FLSA.

Further, it is well-settled that being a member of an LLC, even with active involvement in its operations, does not strip away the liability protections offered by the LLC structure. To pierce this veil, Plaintiffs must present clear, specific, and compelling evidence of wrongdoing by the individual members, distinct from the acts of the LLC. This burden has not been met, nor

were any facts plead to support this argument.

In conclusion, without substantial evidence demonstrating direct violations by the individual defendants, the Court should refrain from holding Javier Cavazos and Maria Carmen Cavazos jointly and severally liable alongside AMAZING GRACE PRIMARY HOME CARE LLC.

**REPLY TO PLAINTIFFS ASSERTION ON ENTERPRISE COVERAGE VIA THE "HANDLING" CLAUSE**

The plaintiffs have relied on the "handling" clause to claim that they fall within the ambit of enterprise coverage under the Fair Labor Standards Act (FLLSA). However, their interpretation threatens to blur the distinction between the terms "handling" and "using", which are both central to understanding the FLSA's scope and applicability.

The FLSA's enterprise coverage provision is designed to regulate businesses that have a more direct and substantial connection to interstate commerce, and not every enterprise that tangentially interfaces with interstate products. Accepting the plaintiff's broad interpretation would effectively make any enterprise that simply "uses" products transported in interstate commerce subject to the FLSA, thereby expanding the statute's reach far beyond its intended scope.

1. **Statutory Interpretation of "Handling"**: The term "handling" as contemplated by the FLSA implies more than mere utilization or consumption of goods. It suggests a direct interaction, manipulation, or management of goods as they relate to commerce. This is not to be conflated with simply "using" such goods within the ordinary course of business. The FLSA does not intend to capture every enterprise that merely consumes or uses products sourced from another state; if it did, the distinction would be rendered moot, and nearly all enterprises would be subject to its provisions.

2. **Broad Interpretation Defeats the Statute's Purpose**: If the Court were to equate "handling" with mere "usage", it would sweep virtually every business into the FLSA's orbit merely because they use products that have, at some point, traveled in interstate commerce. This expansive interpretation would defy the intent of Congress and dilute the purpose of the enterprise coverage provision, which is to address businesses directly engaging in or impacting interstate commerce.

3. **Precedent Supports a Narrow Interpretation**: The jurisprudence surrounding the FLSA has consistently emphasized the need for a narrower understanding of "handling". The intricacies of the handling clause, as detailed in *Platter v. G Force Cement Works*, No. H-19-2012 (S.D. Tex. Mar. 16, 2020), illuminate its specific intent and operational scope. This provision recognizes enterprise coverage for an employer only when it actively involves employees—regardless of whether they are the plaintiffs—in "handling, selling, or otherwise working on goods or materials" that have interfaced with or been produced expressly for commerce. A prerequisite being that the enterprise consistently engages "at least two or more employees" in such defined activities. *Landeros v. Fu King, Inc.,* 12 F. Supp. 3d (S.D. Tex. 2014).

The clause's genesis, underscored by *Polycarpe v. E & S Landscaping Serv. Inc.*, 616 F.3d 1217 (11th Cir. 2010) sought to encompass enterprises interacting with goods obtained within a state's confines but having journeyed interstate beforehand. This interpretation is neither limitless nor nebulous; explicit constraints exist. The FLSA clearly demarcates that once goods culminate their journey, reaching their final consumer (with exceptions for producers, manufacturers, or processors), they are extricated from this definition's purview. 29 U.S.C. § 203 (i):

> "Goods" means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof.

Likewise, the term "materials" carries a distinct meaning within the scope of FLSA. Only items that meet the definition of "tools or other articles necessary for doing or making something" can be classified as 'materials'. Furthermore, the employer's engagement with these items should be for its commercial purposes. The item's mere presence or tangential use does not suffice. An essential distinction, as pointed out in *Landeros* and affirmed in *Polycarpe*, is that the definition of "materials" remains uninfluenced by whether the employer stands as the ultimate consumer. *Landeros, 12 F. Supp. 3d at 1024*.

The plaintiffs, in their pleadings, have yet to present facts that unequivocally ascertain the defendant's regular employment of two or more employees in the handling, selling, or working on such goods or materials, as described above. The facts provided seem to remain at surface level, merely alluding to possible interactions with goods or materials but not delving deep enough to conclusively establish a direct engagement as stipulated by the FLSA's handling clause.

In light of the above, it's evident that the plaintiffs' reliance on the "handling" clause to assert FLSA applicability is misplaced. Their operations, as described in their pleadings, better align with mere "usage" rather than the active "handling" of goods as intended by the statute. We respectfully submit that the plaintiff's claims regarding enterprise coverage based on the "handling" clause should be dismissed.

**REPLY TO PLAINTIFFS ASSERTION THAT THE SECOND PRONG IN THE**

**ENTERPRISE COVERAGE IS SATISFIED WITH THE ALLEGATION OF "UPON INFORMATION AND BELIEF"**

In the recently tendered second amended complaint, Plaintiffs assert "upon information and belief" that Defendants meet the $500,000 threshold for enterprise coverage under the FLSA. Such a vague and generalized assertion, absent concrete and specific factual allegations, is insufficient to survive a Rule 12(b)(6) motion to dismiss.

The threshold requirement of $500,000 is not a mere formality, but a critical jurisdictional component of the FLSA's enterprise coverage. A mere claim based "upon information and belief" without accompanying facts or evidence does not provide the necessary substance to substantiate Plaintiffs' claim. As established in the "Centeno" case and further solidified by the landmark "Twombly" decision, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal*, 495 F.3d 191 (5th Cir. 2007). To reiterate the Supreme Court's guidance in "Twombly": "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

The assertion that Defendants meet the $500,000 threshold based merely "upon information and belief" is tantamount to a formulaic recitation of the FLSA's jurisdictional element. Without detailed factual allegations or evidence to support this claim, it remains an unsubstantiated declaration, falling far short of the pleading standards required to state a claim upon which relief can be granted.

**OPPOSITION TO PLAINTIFFS SECOND MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

Defendants respectfully submit this opposition to Plaintiffs' motion for leave to file a

second amended complaint. At the heart of the current matter is the principle of efficient and fair litigation—a principle which cautions against allowing multiple amendments in response to a singular challenge. In response to Plaintiffs' Motion for Leave to File a Second Amended Complaint, Defendants respectfully submit the following arguments:

1. Previous Opportunity to Amend: Plaintiffs have already had one opportunity to amend their complaint after being confronted with the arguments presented in Defendants' Rule 12(b)(6) motion to dismiss. This earlier amendment was granted with the understanding that the Plaintiffs would correct deficiencies in their initial pleading. However, Plaintiffs chose not to adequately address the very concerns that now prompt their second request for amendment.

2. Judicial Precedent: The Fifth Circuit's holding in *Great Plains Tr. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 329 (5th Cir. 2002), underscores our position. While the court recognized the desirability of resolving cases on their merits rather than the sufficiency of pleadings, it emphasized the necessity of ensuring the efficient and purposeful redrafting of complaints. The court's inclination was to allow plaintiffs a singular opportunity to rectify their pleading deficiencies upon facing a dismissal challenge. Indeed, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case..." (emphasis added). Plaintiffs have had their opportunity and did not use it judiciously.

3. Avoiding Protracted Litigation: Continual amendment of complaints risks protracting the litigation process and potentially prejudices Defendants, who must continually adapt to shifting allegations. The judicial system is built upon principles of fairness and efficiency. Granting Plaintiffs repeated chances to revise their complaint in light of

Defendants' arguments contravenes these principles.

4. Deficiencies may be Incurable: As stated in Great Plains Tr., there are instances where it's apparent that "the defects are incurable." Although the present situation may not be as unequivocal, Plaintiffs' previous amendment, which failed to address the highlighted deficiencies, raises questions about their capacity or willingness to remedy their complaint effectively.

5. Procedural Concerns and Timing: It's worth noting that Plaintiffs are essentially seeking to amend their complaint in direct response to the arguments raised in Defendants' Rule 12(b)(6) motion to dismiss. By admitting their live pleading lacks sufficient factual detail, Plaintiffs are tacitly acknowledging the merits of Defendants' motion. Amending pleadings should be for the purpose of clarifying or correcting substantive issues, not as a mechanism to respond to motions.

6. No Undue Delay? While the Court's scheduling order might permit amendment up to September 19, 2023, for specific reasons such as joining new parties, this should not be misconstrued as an open invitation to amend pleadings for any and all reasons. The timing of this proposed amendment, coming directly on the heels of Defendants' motion, does suggest a reactive approach which can be seen as strategic delay.

7. Prejudice and Efficiency: Contrary to Plaintiffs' assertion, Defendants do experience prejudice. Plaintiffs' proposed amendments would require Defendants to reassess their legal strategy, possibly engage in additional discovery, and expend further resources responding to the new allegations. Allowing the amendment, especially when done in response to a motion, could set a precedent where pleadings are amended reactively, leading to inefficient and prolonged litigation.

8. Futility and Sufficiency: Plaintiffs argue that their amendment is not futile. However, a mere increase in the volume of allegations does not necessarily equate to meeting the plausibility standard set forth by the Twombly decision. While the Court has not yet had an opportunity to assess the merits of the Rule 12(b)(6) motion in light of the original pleadings, it's entirely possible that even the additional facts provided in the proposed Second Amended Complaint still fail to cross the threshold of plausibility.

In conclusion, while the decision to grant leave to amend is inherently within the Court's discretion, it must be tempered by considerations of efficiency, fairness, and the substantive merits of the case at hand. Given that Plaintiffs have already been granted an opportunity to address the concerns raised in Defendants' motion and failed to do so, Defendants respectfully request the Court to deny Plaintiffs' present motion for leave to file a second amended complaint.

**PRAYER**

WHEREFORE, Premises Considered, Defendants respectfully request that the Court deny Plaintiffs' Motion for Leave to File a Second Amended Complaint and grant Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint with prejudice. Further, Defendants request that the Court award them any costs, attorneys' fees, or other relief to which they may be justly entitled and grant such other and further relief, both at law and in equity, to which they may be justly entitled.

Dated: September 22, 2023

                Respectfully submitted,

                VARGAS GUERRA, LLP

                _____
                Daniel E. Vargas
                Texas Bar No. 24072403
                SDTX No. 1286250
                bigdan@vargasguerrallp.com
                Lisa Y. Guerra
                Texas Bar No. 24112407
                SDTX No. 2506606
                lisag@vargasguerrallp.com
                324 W. University Drive
                Edinburg, Tx 78539
                Tel. (956) 287-3743
                Email: litigation@vargasguerrallp.com
                Attorney for Defendants
                Amazing Grace Primary Home Care LLC, Javier Cavazos, and Maria Carmen Cavazos

## CERTIFICATE OF SERVICE

I certify that on September 22, 2023 a true and correct copy of this Reply to Plaintiffs Response to Defendants Motion to Dismiss under Rule 12(b)(6) was served to each person listed below by the method indicated.

Mauro F. Ruiz
RUIZ LAW FIRM, PLLC
118 W. Pecan
McAllen, Texas 78501
Attorney for Plaintiffs
Electronically through the Electronic Filing Manager

Dated: September 22, 2023

                _____
                Daniel E. Vargas