Case 1:23-cv-00054 Document 40 Filed on 02/23/24 in TXSD Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
February 23, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| ALBERT MASCORRO FLORES, *et al.*, | § |
| | § |
| Plaintiffs, | § |
| | § |
| VS. | § CIVIL ACTION NO. 1:23-CV-054 |
| | § |
| AMAZING GRACE PRIMARY HOME CARE, LLC, *et al.*, | § |
| | § |
| Defendants. | § |

## OPINION AND ORDER

In March 2023, Plaintiffs commenced this action against Defendants Amazing Grace Primary Home Care, LLC, and several of its officers, alleging in part that Defendants' employment practices violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. (Compl., Doc. 1) Plaintiffs, who all worked for Amazing Grace, allege that Defendants required Plaintiffs to work overtime without compensation and to work for less than minimum wage.

Defendants Amazing Grace, Javier Cavazos, and Maria Carmen Cavazos moved to dismiss Plaintiffs' FLSA claims based on Federal Rule of Civil Procedure 12(b)(6). (1st Mot. to Dismiss, Doc. 17) Plaintiffs then sought and obtained leave to amend their complaint. (Order, Doc. 20) In their First Amended Complaint, Plaintiffs added new factual allegations and withdrew their claims as to one defendant, Juan Jose Pizana. (1st Am. Compl., Doc. 21) The Court then denied Defendants' first Motion to Dismiss as moot. (Order, Doc. 20)

Defendants now move to dismiss Plaintiffs' FLSA claims within their First Amended Complaint, principally on the grounds that the statute's requirements do not apply to either

Amazing Grace or any of the defendant officers.[1] (2d Mot. to Dismiss, Doc. 25)  For the following reasons, the Court concludes that Plaintiffs' FLSA claims do not survive the Motion to Dismiss.

I.   **Plaintiffs' Allegations**[2]

Defendant Amazing Grace Primary Home Care, LLC is a home health agency domiciled in Los Fresnos, Texas. (1st Am. Compl., Doc. 21, ¶¶ 17, 24)  In 2020 and 2021, Amazing Grace employed Plaintiffs Albert Mascorro Flores, Christina Vargas, Martha Ramos, Juan V. Cortez, III, Christina Cuevas, Leticia Arreola, Arianna Rodriguez, Nereyda Garza, and Nancy Silva as Electronic Visit Verification system ("EVV") clerks and Primary Home Care ("PHC") supervisors. (*Id.* at ¶¶ 2–10, 39–63)  Amazing Grace paid Flores, Arreola, Ramos, and Silva as salaried employees, and Vargas, Cortez, Cuevas, Rodriguez, and Garza on an hourly basis. (*Id.* at ¶¶ 43, 46, 49, 52, 54–63, 88–94)

Plaintiffs' responsibilities included conducting interviews regarding patients' and providers' COVID-19 symptoms and recording those symptoms in Amazing Grace's EVV system and a separate spreadsheet prior to home health appointments. (*Id.* at ¶¶ 30–34)  Amazing Grace required its employees to enter this information "by no later than 11:59 p.m. on the day of the actual home visit", no matter when the visit was scheduled, including for those that occurred at night or on weekends. (*Id.* at ¶¶ 33–35)  Amazing Grace also demanded that Plaintiffs conduct patient interviews during their (the Plaintiffs') vacations. (*Id.* at ¶ 36)  Additionally, Plaintiffs "performed various [other] compensable work-related activities, at home after scheduled hours (8 a.m. – 5 p.m.)", and "did not and could not have a '8 hour' work day or '40 hour' work week." (*Id.* at ¶¶ 33, 39)

---

[1] Plaintiffs also allege causes of action based on Texas law, including for breach of contract, unjust enrichment, quantum meruit, and for violations of the Texas Minimum Wage Act.  Movants do not address these causes of action in their Motion to Dismiss.

[2] For purposes of considering a motion to dismiss under Rule 12(b)(6), a court accepts a plaintiff's well-pleaded allegations as true but does not accept as true legal conclusions couched as factual allegations.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In 2021, the United States Department of Labor investigated Amazing Grace on behalf of service attendants who provided home care for the company. (*Id.* at ¶ 22)  This investigation resulted in payment to the service attendants and notice to Plaintiffs that the DOL had "recovered 'back wages and liquidated damages or other compensation' due to [Plaintiffs] 'under the Fair Labor Standards Act.'" (*Id.* at ¶ 23)  Plaintiffs did not accept that recovery in order to preserve their right to bring suit under the FLSA. (*Id.*)

## II. Applicable Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); FED. R. CIV. P. 12(b)(6).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff's complaint need not contain detailed factual allegations, but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  A court considers only the well-pleaded allegations in the complaint and must accept them as true, viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  These allegations "must be enough to raise a right to relief above the speculative level". *Twombly*, 550 U.S. at 555.  "Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint." *Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013) (quoting *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)); *see also Residents Against Flooding v. Reinvestment Zone No. Seventeen, City of Hous., Tex.*, 260 F. Supp. 3d 738, 757 (S.D. Tex. 2017), *aff'd sub nom. Residents Against Flooding v. Reinvestment Zone No. Seventeen*, 734 F. App'x 916 (5th Cir. 2018).

**III.   Analysis**

Plaintiffs allege that Amazing Grace violated the FLSA by requiring them to work in excess of forty hours per week without overtime compensation. (1st Am. Compl., Doc. 21, ¶¶ 81–94 (citing 29 U.S.C. § 207))  In addition, they allege that Amazing Grace ran afoul of the FLSA's Minimum Wage Provision by paying Plaintiffs Mascorro and Arreola less than $7.25 per hour. (1st Am. Compl., Doc. 21, ¶ 96 (citing 29 U.S.C. § 206))

In seeking dismissal of Plaintiffs' claims, Amazing Grace, Javier Cavazos, and Maria Carmen Cavazos principally argue that "FLSA's coverage, whether through individual or enterprise coverage, does not extend to the Plaintiffs." (2d Mot. to Dismiss, Doc. 25, 6)

**A.   Coverage Requirement**

For the Plaintiffs to succeed on their FLSA claim, they must demonstrate that the statute applies to Amazing Grace.

As to their overtime compensation claim, Section 207 of the FLSA governs, requiring that employers pay overtime compensation for workweeks longer than forty hours. *See* 29 U.S.C. § 207.  To establish a violation under this provision, a plaintiff must show: "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due." *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).  In the present case, Amazing Grace argues that the Plaintiffs' allegations do not satisfy the second element.

A similar requirement exists as to Plaintiffs' claim that Amazing Grace paid some employees less than the statutorily required minimum wage. *See* 29 U.S.C. § 206 (requiring a $7.25 per hour minimum wage). "To state an FLSA [minimum wage] claim, . . . an employee must plead that the employee is covered by the FLSA and that the employer failed to pay the FLSA-required wages." *Molina-Aranda v. Black Magic Enters., LLC*, 983 F.3d 779, 786 (5th Cir. 2020);

4 / 13

*see also* 29 U.S.C. § 216(b) (providing a right of action to employees against their employers for unpaid minimum wages as defined by Section 203). Amazing Grace contends that Plaintiffs' allegations fail to establish coverage under the FLSA's minimum wage provision.

Employees bear the burden of establishing coverage under the FLSA. *Sobrino v. Medical Center Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (per curiam). Plaintiffs can do so via claims based on "individual coverage" or on "enterprise coverage." In the present case, "Plaintiffs have pled that the FLSA is applicable on the basis of enterprise coverage." (Resp., Doc. 31, 2; *see also* 1st Am. Compl., Doc. 21, ¶ 24 (alleging that Amazing Grace "operated as an 'enterprise engaged in commerce' as that term is defined by 29 U.S.C. 203 (s)")) Under this theory, the statute requires that Plaintiffs demonstrate that Amazing Grace "engaged in commerce or in the production of goods for commerce." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992).

In relevant part, the statute defines "enterprise engaged in commerce or in the production of goods for commerce" as an enterprise that:

(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) . . . .

29 U.S.C. § 203(s)(1)(A). For purposes of this definition, the statute defines "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof". 29 U.S.C. § 203(b).

The Fifth Circuit construes these provisions liberally, stating that the statute "contains simple words that are in common use", which "must be given their usual and ordinary meaning", requiring "no outside aid in its interpretation". *Tenn. Coal, Iron & R. Co. v. Muscoda Loc. No. 123*, 137 F.2d 176, 181 (5th Cir. 1943); *see also Marshall v. Victoria Transp. Co.*, 603 F.2d 1122,

1123–24 (5th Cir. 1979) (citing *Brennan v. Wilson Building, Inc.*, 478 F.2d 1090 (5th Cir. 1973)) ("This court is committed to giving the [FLSA] a broad, liberal construction."). "No *de minimis* rule applies to the Act; any regular contact with commerce, no matter how small, will result in coverage." *Marshall*, 603 F.2d at 1124 (citing *Mabee v. White Plains Publishing Co., Inc.* 327 U.S. 178 (1946); *Schultz v. Kip's Big Boy, Inc.*, 431 F.2d 530 (5th Cir. 1970); and *Mitchell v. Independent Ice & Cold Storage Co.*, 294 F.2d 186 (5th Cir. 1961)).

Applying these principles to the present case, the Court concludes that Plaintiffs' allegations, accepting them as true, do not demonstrate that Amazing Grace meets the definition of Section 203(s)(1)(A). As to the first prong, Plaintiffs allege only that Amazing Grace is regulated by the Texas Health and Human Services Commission and that it must utilize EVVs to properly care for Medicaid beneficiaries. (1st Am. Compl., Doc. 21, ¶¶ 24–28) But at no point do Plaintiffs allege that Amazing Grace engaged in any "trade, commerce, transportation, transmission, or communication *among the several States or between any State and any place outside thereof*". 29 U.S. § 203(b) (emphasis added). And a reasonable construction of Plaintiffs' allegations allows only the inference that all of the alleged services occurred locally–namely, the homes of the patients or the office or homes of the employees.

In addition, Plaintiffs' allegations do not demonstrate that Amazing Grace enjoyed at least $500,000 in annual gross volume of sales made or business. The First Amended Complaint contains no allegations regarding Amazing Grace's sales or services during the Plaintiffs' period of employment. Plaintiffs appear to rely on the conclusory allegation that Amazing Grace "operated as an 'enterprise engaged in commerce' as that term is defined by 29 U.S.C. 203 (s)." (1st Am. Compl., Doc. 21, ¶ 24) But no factual allegations support this blanket statement. Without some well-pled facts concerning Amazing Grace's business, the Court cannot infer that the company meets the statutory requirement in Section 203(s)(1)(A)(ii). *Cf. Falk v. Brennan*, 414

U.S. 190 (1973) (affirming dismissal because defendants' gross commissions "did not reach $500,000 annually during the period involved in this litigation").

## B. Javier Cavazos and Maria Carmen Cavazos

J. Cavazos and M.C. Cavazos also move for dismissal of Plaintiffs' claims against them. In response, Plaintiffs contend that the Motion to Dismiss mentions these two individual defendants only in the opening paragraph, and that the motion presents no specific arguments related to the individuals' defenses. (Resp., Doc. 31, 1–2)  As a result, Plaintiffs continue, the Court should "refrain from dismissing any claim against Javier Cavazos and Maria Carmen Cavazos." (*Id.*)

While Plaintiffs correctly note that the Motion to Dismiss focuses on whether the FLSA applies to Amazing Grace through enterprise coverage, this fact does not preclude consideration of the Motion to Dismiss as to J. Cavazos and M.C. Cavazos. In their First Amended Complaint, Plaintiffs allege that J. Cavazos and M.C. Cavazos are owners, operators, and members of Amazing Grace. Beyond this allegation, the First Amended Complaint contains no statement regarding J. Cavazos, and alleges only that M.C. Cavazos directed Plaintiffs "to record each patient's and each provider's COVID symptoms before entering any household." (1st Am. Compl., Doc. 21, ¶ 30) Given the paucity of allegations concerning J. Cavazos and M.C. Cavazos, Plaintiffs can only seek to hold J. Cavazos and M.C. Cavazos liable through their role as owners, operators, and members of Amazing Grace. In light of the fact that the Court concludes that Plaintiffs do not present a viable claim against Amazing Grace under the FLSA, the Court also necessarily concludes that Plaintiffs cannot pursue a cause of action under the FLSA against Amazing Grace's owners, operators, and members. *See Gray v. Powers*, 673 F.3d 352 (5th Cir. 2012) (declining to adopt a rule imposing individual liability on officers of "entities that are employers under the FLSA based on their position rather than the economic reality of their involvement in the company"); *see also Spring Street Partners-IV, LP v. Lam*, 730 F.3d 427, 443 (5th Cir. 2013) ("Due to the limited

liability that corporations and LLCs offer to their owners, a plaintiff seeking to impose individual liability on an owner must 'pierce the corporate veil.'") (citations omitted).

## IV.     Plaintiffs' Opposed Motion to File Second Amended Complaint (Doc. 30)

In conjunction with their response to the Motion to Dismiss, Plaintiffs also filed an Opposed Motion for Leave to File Second Amended Complaint (Doc. 30). Plaintiffs argue that their proposed amended pleading cures any deficiency within their First Amended Complaint, warranting a denial of the Motion to Dismiss. For the following reasons, the Court declines to grant Plaintiffs leave to amend their First Amended Complaint.

### A.  Prior Opportunity to Amend

Plaintiffs initiated this lawsuit in March 2023. In their original Complaint, they alleged that Amazing Grace "operated as an 'enterprise engaged in commerce' as that term is defined by 29 U.S.C. 203 (s)." (Compl., Doc. 1, 5)  Plaintiffs did not allege that the FLSA applied through individual coverage.

In May, Defendants moved to dismiss Plaintiffs' claims. In part, Defendants argued that "the FLSA's coverage, whether through individual or enterprise coverage, does not extend to the Plaintiffs." (1st Mot. to Dismiss, Doc. 17, 6)

Two weeks later, Plaintiffs moved for leave to file their First Amended Complaint, attaching their proposed amended pleading. (1st Mot. for Leave, Doc. 19)  At the time, Plaintiffs had knowledge of the arguments that Defendants had presented in their initial Motion to Dismiss. The Court granted Plaintiffs' motion, directed the Clerk of Court to file the First Amended Complaint, and then denied Defendants' first Motion to Dismiss as moot. (*See* Order, Doc. 20)

Defendants proceeded to file anew their Motion to Dismiss (Doc. 25), challenging the FLSA claims in the First Amended Complaint. Their renewed motion largely resembles the first, and again urges that "the FLSA's coverage, whether through individual or enterprise coverage, does not extend to the Plaintiffs." (2d Mot. to Dismiss, Doc. 25, 6)

In response, Plaintiffs request leave to file a Second Amended Complaint "for the purpose of setting forth additional factual allegations that will demonstrate the existence of enterprise coverage and will thus warrant the denial of Defendants' motion to dismiss." (2d Mot. for Leave, Doc. 30, 1)  Defendants oppose the motion, arguing that Plaintiffs "have already had one opportunity to amend their complaint after being confronted with the arguments presented in Defendants'" motion to dismiss, that Plaintiffs are attempting to use the amendment process to respond to Defendants' motions rather than pleading their best complaint from the outset, and that the proposed amendment would be futile. (Rep., Doc. 33, 8–10)

### B. Applicable Standard

Federal Rule of Civil Procedure 15(a)(1) allows a party to "amend its pleading once as a matter of course no later than . . . 21 days after service of a motion under Rule 12(b)". "[I]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2).  In the present matter, Plaintiffs move under Rule 15(a)(2) for leave to file their Second Amended Complaint.

Courts should "freely give leave [to amend] when justice so requires." *Id.*  Courts construe the rule liberally, evincing "a bias in favor of granting leave to amend", so long as the party requesting amendment demonstrates with particularity the grounds for the amendment and the relief sought. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002)).

At the same time, leave to amend under Rule 15(a)(2) is not automatic, and whether to grant such leave is left to "the sound discretion of the district court." *U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 386 (5th Cir. 2003); *see also Davis v. United States*, 961 F.2d 53, 57 (5th Cir. 1991).  Courts may deny a motion for leave to amend for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance

9 / 13

of the amendment, futility of amendment, etc." *Thomas*, 832 F.3d at 591 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). For example, a "district court is justified in denying leave to amend when a plaintiff has 'fail[ed] to cure deficiencies by amendments previously allowed.'" *United States ex rel. Jamison v. Del-Jen, Inc.*, 747 F.App'x 216, 221 (5th Cir. 2018) (quoting *Willard*, 336 F.3d at 386); *see also Willard*, 336 F.3d at 387 (citing *Foman*, 371 U.S. at 182) (affirming denial of leave to amend when the plaintiff had already had the opportunity to amend the complaint to cure its lack of specificity). "At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986).

Federal courts also deny leave to amend a complaint when the proposed amendments would be futile because they would not state a claim upon which relief could be granted. *See, e.g., Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016). "When futility is advanced as the reason for denying an amendment to a complaint, the court is usually denying leave because the theory presented in the amendment lacks legal foundation or because the theory has been adequately presented in a prior version of the complaint." *Thomas*, 832 F.3d at 591 (quoting *Jamieson By & Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985)). "[A] complaint is futile if it lacks 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Thomas*, 832 F.3d at 592 (quoting *Iqbal*, 556 U.S. at 678) (cleaned up).

### C. Application

The Court finds that Plaintiffs, through their First Amended Complaint, had the opportunity to address the arguments within Defendants' Motion to Dismiss. Granting leave for Plaintiffs to file their Second Amended Complaint would only occasion undue delay in this lawsuit. Plaintiffs contend that they did not file their First Amended Complaint to address Defendants' motion to dismiss, and that they should be given the opportunity to do so now. (2d

Mot. for Leave, Doc. 30, 1)  But this argument lacks merit.  When Plaintiffs filed their First Amended Complaint, Defendants had already filed their initial motion to dismiss.  And in that motion, Defendants argued that Plaintiffs could not rely on enterprise coverage to apply the FLSA.  As a result, Plaintiffs had the opportunity to add factual allegations related to that argument.  In addition, in asserting their causes of action under the FLSA, Plaintiffs rely solely on the theory of enterprise coverage.  They had an obligation to plead sufficient facts–in their Original Complaint– to present a viable claim under that theory.  They then received an opportunity to buttress those allegations by receiving leave to file their First Amendment Complaint.  They present no reason why they could not have added allegations regarding enterprise coverage within the First Amended Complaint.  As a result, the Court accepts their live pleading as their best pled complaint.

In addition, the Court finds that some of the proposed new allegations would not allow the Court to conclude that Plaintiffs present a viable claim for enterprise coverage.

First, Plaintiffs propose to allege that Amazing Grace "employed two or more employees who regularly handled, sold, or otherwise worked on goods and/or materials in their daily work that were moved in and/or produced for commerce." (Proposed 2d Am. Compl., Doc. 30–1, ¶ 48) They provide examples, such as "vehicles, fuel, computers, computer software, phones and/or cell phones, and other office supplies/materials used in connection with [Amazing Grace's] business." (*Id.*)  But they fail to allege that Amazing Grace through its employees' activities engaged in "trade, commerce, transportation, transmission, or communication *among the several States or between any State and any place outside thereof*". 29 U.S.C. § 203(b) (emphasis added).  In fact, Plaintiffs never allege–in their Original, First, or Proposed Second Complaint–any facts demonstrating any activity by Amazing Grace in another state.  And the facts that Plaintiffs do allege do not permit an inference that such activity occurred.  Plaintiffs allege that Amazing Grace is domiciled in Los Fresnos, Cameron County, Texas, and that it provides primary home care. (1st Am. Compl.,

Doc. 21, ¶¶ 17, 24; Proposed 2d Am. Compl., Doc. 30–1, ¶¶ 42, 58)  The Court can take judicial notice that Los Fresnos lies about 400 miles from the nearest Texas state border, with Louisiana.[3] Given the nature of Amazing Grace's business, the Court cannot reasonably infer that Amazing Grace employees provide services to patients in Louisiana or an even more distant state.

Second, Plaintiffs seek to add the conclusory allegation, "[o]n information and belief", that Amazing Grace "has had annual gross volume sales made or business done in excess of $500,000.00." (Proposed 2d Am. Compl., Doc. 30–1, ¶ 52)  While parties may plead facts "on information and belief", using this principle to merely track the language of a statutory requirement does not suffice.  Plaintiffs must allege specific facts that allow the reasonable inference that Amazing Grace conducts the requisite amount in gross volume sales.  Plaintiffs' proposed approach would allow any plaintiff to automatically create a viable cause of action by reciting the claim's elements, and to do so "on information and belief."  The law does not support such an attempt.

Plaintiffs do propose allegations that arguably support the application of enterprise coverage.  In particular, Plaintiffs allege that Amazing Grace employees: (1) use equipment and vehicles that were produced or manufactured "out of state" (*Id.* at ¶¶ 49–50); and (2) "handled documentation and communications going to and from out-of-state Health Maintenance Organizations (HMO's), insurers, and federal agencies as part of their daily work" (*Id.* at ¶ 51).  In the Fifth Circuit, "an employer can trigger enterprise coverage if its employees handle items that had travelled in interstate commerce at some point in the past, even if the act of handling those items does not amount to engaging in commerce in the present." *See Molina-Aranda*, 983 F.3d at 786–87.  Plaintiffs' proposed allegations largely track the language of cases such as *Molina-Aranda* and border on conclusory statements.  But even if they represent well-pled facts, Plaintiffs offer no reason why they could not have added these allegations in either their original or First

---

[3] Plaintiffs do not allege that Amazing Grace conducts business in nearby Mexico.

12 / 13

Amended Complaints. As a result, the Court declines to consider these allegations and accepts their live pleading as Plaintiffs' best pled complaint.

### D. Conclusion

For these reasons, it is:

**ORDERED** that Plaintiffs' Opposed Motion for Leave to File Second Amended Complaint (Doc. 30) is **DENIED**;

**ORDERED** that Defendant's Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6) (Doc. 25) is **GRANTED**; and

**ORDERED** that Plaintiff Albert Mascorro Flores's, *et al.*, causes of action under the Fair Labor Standards Act within their First Amended Complaint (Doc. 21) are **DISMISSED WITH PREJUDICE** as to Defendants Amazing Grace Primary Home Care, LLC, Javier Cavazos, and Maria Carmen Cavazos.[4]

All other relief not expressly granted is denied.

Signed on February 23, 2024.

_Fernando Rodriguez, Jr._
Fernando Rodriguez, Jr.
United States District Judge

---

[4] This Order and Opinion does not address any causes of action as to Defendant Maria Luisa Macias.